<u>UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK</u>

CONSUMER FINANCIAL PROTECTION BUREAU, et al.,

                                      Plaintiffs,           Case # 21-CV-537-FPG

v.

                                                               DECISION & ORDER

DOUGLAS MACKINNON, et al.,

                                      Defendants.

## INTRODUCTION

Plaintiffs Consumer Financial Protection Bureau ("the Bureau") and People of the State of New York ("the State") bring this action to unwind allegedly fraudulent conveyances carried out by a judgment debtor. *See* ECF No. 1. Defendants are Douglas MacKinnon (the judgment debtor), Amy MacKinnon (Douglas's wife), Mary-Kate MacKinnon (Douglas's daughter), and Matthew MacKinnon (Douglas's brother).[1] Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 19, 20, 21. For the reasons that follow, Defendants' motions are DENIED.

## LEGAL STANDARD

A complaint will survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) when it states a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is plausible when the plaintiff pleads sufficient facts that allow the Court to draw the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. In considering the plausibility of a claim, the Court must accept factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104

---

[1] For ease of reference, the Court will refer to Defendants by their first names.

(2d Cir. 2011). At the same time, the Court is not required to accord "[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness." *In re NYSE Specialists Secs. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). A court "is generally limited to the [complaint] when considering" a motion to dismiss. *Magnotta v. Putnam Cty. Sheriff*, No. 13-CV-2752, 2014 WL 705281, at *3 (S.D.N.Y. Feb. 24, 2014)). When alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake," though intent "may be alleged generally." Fed. R. Civ. P. 9(b); *see also U.S. ex rel. Kester v. Novartis Pharms. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014) ("Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud.").

## BACKGROUND

The following facts are taken from the complaint, unless otherwise noted. Plaintiffs allege that Douglas was, until recently, the "head of a debt-collection enterprise who made millions of dollars by inflating the balances of debts owed and encouraging [his] collectors . . . to use illegal tactics." ECF No. 1 ¶ 18. In March 2014, Douglas learned that one of his debt-collection companies was under investigation by the Bureau for its collection activities. *Id.* ¶ 2. As 2014 progressed, the Bureau and the State began investigating other companies associated with Douglas. *See id.* ¶¶ 3, 34.

At the time the investigation began, Douglas and Amy owned, as tenants by the entirety, a property located in East Amherst, New York. *Id.* ¶ 22. That property included a "six-bedroom, seven-bathroom single-family home with a current assessed value of approximately $1,600,000." *Id.* ¶ 25. On April 22, 2015, Douglas transferred his interest in the East Amherst property to Amy and Mary-Kate. The transfer was effectuated by quitclaim deed for one dollar in consideration.

2

*Id.* ¶ 23; *see also* ECF No. 1-3 at 3. On May 12, 2015, Amy granted a $900,000 mortgage to Matthew, who maintained a "close relationship" with the other defendants. ECF No. 1 ¶ 32. Both the transfer and the mortgage were recorded with the Erie County Clerk on May 13, 2015. *Id.* ¶¶ 23, 29. Plaintiffs allege that Douglas, with the assistance of the other defendants, conveyed the property "with the intent to hinder, delay and defraud present and future creditors." *Id.* ¶¶ 26, 54. Moreover, the mortgage was illusory: it was granted "with the intent to make it appear that the Property was encumbered and therefore not a potential source of recovery." *Id.* ¶ 30.

In November 2016, Plaintiffs sued Douglas for "running a large-scale debt-collection operation that used illegal tactics to extort money from consumers." *Id.* ¶ 5. In August 2019, a stipulated final judgment was entered against Douglas, which included a civil penalty totaling $60,000,000. *Id.* ¶ 6. Plaintiffs allege that Douglas has "paid nothing toward satisfying the Judgment." *Id.* ¶ 21.

In April 2021, Plaintiffs brought the present action. ECF No. 1. They raise four claims. First, against Douglas, Amy, and Mary-Kate, the Bureau alleges that the property was fraudulently transferred under the Federal Debt Collection Procedures Act ("FDCPA").[2] *Id.* at 7-8. Second, against Douglas, Amy, and Mary-Kate, the State alleges that the property was fraudulently conveyed in violation of Section 276 of New York Debtor & Creditor Law.[3] *Id.* at 8-9. Third, against Douglas, Amy, and Matthew, the State alleges that the mortgage was granted with intent

---

[2] Although denominated as one claim, the Bureau's first claim consists of two distinct theories: actual fraud under Section 3304(b)(1)(A) and constructive fraud under Section 3304(b)(1)(B)(ii). *See* ECF No. 1 ¶¶ 44, 45.

[3] New York's Debtor & Creditor Law "was amended effective April 4, 2020." *In re Level 8 Apparel, LLC*, No. 16-13164, 2021 WL 279620, at *5 n.8 (Bankr. S.D.N.Y. Jan. 26, 2021). "The amended statute applies to transactions occurring on or after April 4, 2020," *id.*, and so does not apply here.

to defraud, in violation of Section 276. *Id.* at 9. Fourth, Plaintiffs seek a declaratory judgment that the transfer of the property was fraudulent and is void, that the mortgage granted to Matthew was not made in good faith, that the fraudulent conveyance "terminated any tenancy by the entirety" or homestead exemption, and that the property is "subject to levy and execution." *Id.* at 10.

## DISCUSSION

Defendants move to dismiss all of the claims, asserting that the complaint does not plausibly allege that the transfer of and mortgage on the property were effectuated with fraudulent intent. At the outset, however, the Court observes that most of Defendants' arguments are inappropriate given the procedural posture of the case. They have submitted declarations attesting that their actions were taken for legitimate reasons, *see* ECF Nos. 19-2, 20-2, 21-1, 21-2, even though a court may not consider such materials on a Rule 12(b)(6) motion. *See Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000) (noting that a district court errs "when it considers affidavit and exhibits submitted by defendants" on a Rule 12(b)(6) motion (internal quotation marks and brackets omitted)). Defendants also challenge the sufficiency of the allegations in several respects,[4] but in doing so, they fail to read the allegations in the light most favorable to Plaintiffs—contrary to the applicable standard of review. *See id.* at 83 (stating that a district court must construe "all reasonable inferences in favor of the plaintiff"). The Court will not address such arguments any further. Instead, limiting itself to the allegations in the complaint, and viewing

---

[4] *See, e.g.*, ECF No. 19-6 at 10 (arguing that, at the time the Bureau's investigation began, "there was no indication that Plaintiffs would take a judgment against Douglas"); ECF No. 29 at 8 (positing that the complaint "contains no allegation" that Matthew was made "aware of [the Bureau's] investigation"); ECF No. 30 at 6 (contending that the complaint does not sufficiently allege that Amy was aware of the Bureau's investigation); ECF No. 32 at 3-4 (asserting that the complaint makes no allegation that Douglas "became aware of Plaintiffs' investigation[] prior to the transfer of the premises").

them in the light most favorable to Plaintiffs, the Court concludes that the complaint plausibly alleges that the transfer and mortgage were fraudulent.

As to the issue of fraudulent intent, the FDCPA and Section 276 provide similar standards. Under the former, a transfer made by a debtor is fraudulent, even if the debt arises after the transfer, if the debtor "makes the transfer . . . with actual intent to hinder, delay, or defraud a creditor." 28 U.S.C. § 3304(b)(1)(A). Actual intent may be determined by reference to several factors—sometimes called "badges of fraud"—including whether "the transfer or obligation was to an insider," "the debtor retained possession or control of the property transferred after the transfer," "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit," "the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred," and "the transfer occurred shortly before or shortly after a substantial debt was incurred." *Id.* § 3304(b)(2)(A), (B), (D), (H), (J). In addition, federal law provides a defense for good faith transfers: "[a] transfer or obligation is not voidable . . . with respect to a person who took in good faith and for a reasonably equivalent value or against any transferee or obligee subsequent to such person." *Id.* § 3307(a).

At the time relevant to these events, Section 276 provided, "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. Debt. & Cred. Law § 276. "The burden of proving actual intent is on the party seeking to set aside the conveyance, by clear and convincing evidence." *In re Xiang Yong Gao*, 560 B.R. 50, 63 (Bankr. E.D.N.Y. 2016). "Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, [a] pleader is allowed to rely on 'badges of fraud' to support

his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Wall St. Assocs. v. Brodsky*, 684 N.Y.S.2d 244, 247 (1st Dep't 1999) (internal quotation marks omitted). "Among such circumstances are: a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration; the transferor's knowledge of the creditor's claim and the inability to pay it; and retention of control of the property by the transferor after the conveyance." *Id.*; *see also Dempster v. Overview Equities, Inc.*, 773 N.Y.S.2d 71, 74 (2d Dep't 2004). Like the FDCPA, New York law "provides an affirmative defense that allows a bona fide purchaser for value who took without knowledge of the fraud to retain the transfer." *In re Dreier LLP*, 452 B.R. 391, 433-34 (Bankr. S.D.N.Y. 2011).

Under both standards, the complaint sufficiently alleges that Douglas transferred the property with actual intent to hinder, delay, or defraud a creditor. Through his debt-collection companies, Douglas had been engaging in illegal debt-collection practices "to extort money from consumers." ECF No. 1 ¶ 5. In 2014, he learned that his companies were under investigation by the Bureau. *Id.* ¶¶ 2, 3, 34. Given the "millions of dollars" Douglas had personally made through the illegal collection practices he had overseen and encouraged, *id.* ¶ 18, it is reasonable to infer that Douglas was at that time aware that he would likely face civil prosecution and one or more significant judgments, which would be "beyond his ability to pay."[5] *Id.* ¶ 36; *see* 28 U.S.C. §

---

[5] Amy and Mary-Kate assert that, because the State—as opposed to the Bureau—never notified Douglas of any investigation prior to the transfer, "the subsequent transfer of the property by Douglas" could not have been done "to hinder, delay or defraud the State." ECF No. 30 at 10. Absent more developed legal argument, the Court cannot conclude that a specific intent to defraud the State, as opposed to future creditors generally, is necessary to sustain the Section 276 claim. *See United States v. Nassar*, No. 13-CV-8174, 2014 WL 5822677, at *9 (S.D.N.Y. Nov. 10, 2014) ("[I]t is sufficient if such fraudulent intent existed either specifically *or generally* with respect to the subsequent creditor or creditor[s]." (emphasis added)); *see also* N.Y. Debt. & Cred. Law § 276 ("Every conveyance made and every obligation incurred with actual intent,

6

3304(b)(2)(D), (J).  Douglas thereafter engaged in the highly unusual transfer of a personally significant asset—his $1.6 million residence—to two insiders for nominal consideration.  *See* 28 U.S.C. § 3304(b)(2)(A); *see also HBE Leasing Corp. v. Frank*, 48 F.3d 623, 639 (2d Cir. 1995) ("Actual fraudulent intent . . . may be inferred from . . . [the] unusualness of the transaction."). Further demonstrating that the transfer was a sham to thwart creditors are the allegations that Douglas continued to "reside at and exercise control over" the property and is now unwilling or unable to pay off the judgment.  *See* ECF No. 1 ¶¶ 21, 33; *see also* 28 U.S.C. § 3304(b)(2)(B), (E); *Milin v. Pak*, 138 N.Y.S.3d 96, 99 (2d Dep't 2020) (complaint sufficiently alleged fraudulent intent, where plaintiff alleged that debtor instituted "a sham divorce to transfer the property to his wife to shield it from the plaintiff's lawsuit, and continued to reside in and retain control over the property after the divorce and transfer").

Additionally, the complaint plausibly alleges that the mortgage "was not granted in good faith" and was "made with the intent to make it appear that the Property was encumbered."  ECF No. 1 ¶ 30.  Shortly after Douglas, Amy, and Mary-Kate took action to transfer the property away from Douglas, Amy and *another* insider, Matthew, executed a mortgage that would encumber the property.  In fact, this mortgage was illusory, lacked consideration, and was for the purpose of deceiving creditors.  *See id.*  This allegation is supported by several other facts in the complaint, including the temporal proximity between the fraudulent transfer and the mortgage, *id.* ¶ 29; Amy's participation in both the fraudulent transfer and the mortgage, especially given her awareness of the Bureau's investigation and her involvement in Douglas's debt-collection operations, *id.* ¶¶ 27, 28, 29; and Matthew's close relationship with Amy and Douglas, *id.* ¶ 31.

---

. . . to hinder, delay, or defraud either present or *future creditors*, is fraudulent as to both present and *future creditors*." (emphasis added)).

The complaint plausibly alleges that the mortgage was no ordinary arm's-length business transaction, but one component of a broader, fraudulent scheme to hide the property from creditors.

Taken together, Plaintiffs have identified several hallmark badges of fraud that permit the inference that the transfer of the property and the execution of the mortgage were performed with the actual intent to hinder, delay, or defraud a creditor. *See In re Saba Enters., Inc.*, 421 B.R. 626, 644 (Bankr. S.D.N.Y. 2009) ("[T]he existence of several badges of fraud constitutes clear and convincing evidence of actual intent." (internal quotation marks omitted)). And, insofar as none of the transactions were for fair consideration, the complaint plausibly alleges that neither Amy, Mary-Kate, nor Matthew can take advantage of any bona fide purchaser defense. Accordingly, the claims of actual fraud will not be dismissed on the grounds raised by Defendants.

The Court must address one final matter. Although Douglas, Amy, and Mary-Kate primarily challenge the complaint's sufficiency with regard to fraudulent intent, they also contend that no constructive fraud claim lies against them under Section 3304(b)(1)(B)(ii). The Court concludes that the Bureau's constructive fraud claim is sufficiently pled. "A constructive fraudulent transfer under the FDCPA is a transfer by a debtor whether such debt arises before or after the transfer is made, that is made without receiving a reasonably equivalent value in exchange for the transfer . . . if the debtor . . . intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." *United States v. Strevell*, No. 16-CV-669, 2018 WL 3328571, at *4 (N.D.N.Y. July 6, 2018). Here, the Bureau sufficiently alleges that the transfer of the property to Amy and Mary-Kate was for $1 in consideration, which is not a "reasonably equivalent value in exchange" for a $1.6 million property. 28 U.S.C. § 3304(b)(1)(B); *see, e.g.*, *United States v. Sheehan*, No. 03-CV-6331, 2004

8

WL 2700348, at *5 (E.D. Pa. Nov. 23, 2004) ($1 not "reasonably equivalent value" in exchange for transfer of property valued at $175,000). And, as stated above, the allegations permit the reasonable inference that, given the massive sums he had extracted from consumers through his illegal tactics, Douglas "believed or reasonably should have believed that he would incur[] debts beyond his ability to pay" once he learned about the Bureau's investigation in 2014. 28 U.S.C. § 3304(b)(1)(B)(ii); *cf. United States v. Brantley*, No. 15-CR-225, 2019 WL 8012585, at *5 (N.D. Tex. Nov. 8, 2019) ("Having defrauded the government out of a significant sum of money, any reasonable person should have believed a criminal investigation would be possible."). Therefore, the constructive fraud claim will not be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (ECF No. 19, 20, 21) are DENIED. Defendants shall file their answers by November 29, 2021.

IT IS SO ORDERED.

Dated: October 27, 2021
       Rochester, New York

                                            HON. FRANK P. GERACI, JR.
                                            United States District Judge
                                            Western District of New York