UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CONSUMER FINANCIAL PROTECTION BUREAU, et al.,

                                        Plaintiffs,

                                                                   Case # 21-CV-537-FPG

v.

                                                                   DECISION AND ORDER

DOUGLAS MACKINNON, et al.,

                                        Defendants.
_____

## INTRODUCTION

Plaintiffs Consumer Financial Protection Bureau ("the Bureau") and People of the State of New York ("the State") move for summary judgment against Defendants Douglas MacKinnon, Amy MacKinnon, Mary-Kate MacKinnon, and Matthew MacKinnon.[1] ECF No. 75. Defendants oppose the motion. For the reasons that follow, Plaintiffs' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

The following facts are undisputed, unless otherwise noted. Douglas began working in the debt-collection industry in 2000 and started operating his own debt-collection enterprises in 2001. ECF No. 75-2 ¶ 1. In 2015, Douglas's operations "peaked." *Id.* ¶ 2. His business was conducted through several entities, including Enhanced Acquisitions Group, LLC, and Northern Resolution Group, LLC, both of which were collecting debts "in the range of a million two to a million five" per month. *Id.* ¶¶ 2, 3. At this time, Douglas was aware that he "could be personally liable" if those entities were found to have violated the law and that, given the size of his debt-collection activities, his potential liability "vastly exceeded" his net worth. *Id.* ¶ 4.

---

[1] For ease of reference, the Court identifies Defendants by their first names.

1

In November 2016, Plaintiffs sued Douglas, Northern, and Enhanced for their debt collection practices. *See* No. 16-CV-880, ECF No. 1. They alleged that Douglas "created a network of interrelated companies to purchase defaulted consumer-debt portfolios" and "collect[ed] on [those debts] illegally." *Id.* ¶ 2. Plaintiffs alleged violations of the Consumer Financial Protection Act, the Fair Debt Collection Practices Act, and similar New York statutes. *Id.* ¶ 8.

In August 2019, the litigation was resolved by stipulated final judgments and orders against each defendant. *See* No. 16-CV-880, ECF Nos. 87, 88. Douglas, Northern, and Enhanced agreed to a $60 million judgment. No. 16-CV-880, ECF No. 87. However, in November 2020, Plaintiffs sought post-judgment discovery, as Douglas MacKinnon had failed to make any payments on the judgment and had failed to respond to discovery requests. No. 16-CV-880, ECF No. 89.

In April 2021, while the post-judgment proceedings in the original case continued, Plaintiffs instituted the present action against Douglas, Amy (Douglas's wife), Mary-Kate (Douglas's daughter), and Matthew (Douglas's brother). ECF No. 1. They alleged that in April 2015, after learning that he was under investigation by the Bureau, Douglas had fraudulently conveyed a million-dollar property located in East Amherst, New York, to Amy and Mary-Kate. *Id.* ¶¶ 4, 23, 25. Amy then granted a $900,000 mortgage to Matthew. *Id.* ¶ 29.

Plaintiffs raised four claims in their complaint. First, against Douglas, Amy, and Mary-Kate, the Bureau alleged that the property was fraudulently transferred under the Federal Debt Collection Procedures Act ("FDCPA"). *Id.* at 7-8. Second, against Douglas, Amy, and Mary-Kate, the State alleged that the property was fraudulently conveyed in violation of New York

Debtor & Creditor Law ("Article 10").[2] *Id.* at 8-9. Third, against Douglas, Amy, and Matthew, the State alleged that the mortgage was granted with intent to defraud, in violation of Article 10. *Id.* at 9. Fourth, Plaintiffs sought a declaratory judgment that the transfer of the property was fraudulent and is void, that the mortgage granted to Matthew was not made in good faith, that the fraudulent conveyance "terminated any tenancy by the entirety" or homestead exemption, and that the property is "subject to levy and execution." *Id.* at 10.

After the filing of this action, Erie County foreclosed on and sold the East Amherst property to satisfy outstanding property tax liabilities. ECF No. 75-2 ¶ 115. As it stands, there are $1,332,226.30 in proceeds being held in escrow, "which is the total amount left after deductions for tax liabilities and sale costs." *Id.* ¶ 118. The proceeds are being held pending the disposition of this litigation. ECF No. 75-6 at 183-84.

Plaintiffs now move for summary judgment, arguing that judgment as a matter of law is warranted on their claims and that they are entitled to the entirety of the escrowed funds. *See* ECF No. 75-3 at 30.

## DISCUSSION

Before delving into Plaintiffs' motion, it is important to note at the outset that the character of this litigation has shifted significantly since the filing of the complaint. Originally, Amy and Mary-Kate held the property as tenants in common, and some of Plaintiffs' requested relief was premised on that fact: Plaintiffs requested, among other things, that the Court "declare that [Douglas's and Amy's] tenancy by the entirety in the Property is terminated," and "direct[] the levy and execution of the Judgment upon the Property and the sale of the Property by the United

---

[2] New York's Debtor & Creditor Law "was amended effective April 4, 2020." *In re Level 8 Apparel, LLC*, No. 16-13164, 2021 WL 279620, at *5 n.8 (Bankr. S.D.N.Y. Jan. 26, 2021). "The amended statute applies to transactions occurring on or after April 4, 2020," *id.*, and so does not apply here.

States Marshal." ECF No. 1 at 11. With the sale of the property, this litigation has narrowed to a dispute over the parties' respective entitlements to the escrowed proceeds.[3] Plaintiffs now seek monetary and declaratory relief limited to their "entitle[ment] to all of the escrowed funds free and clear of any mortgage interest of Matthew MacKinnon's." ECF No. 75-3 at 24-25, 30. For the reasons discussed below, the Court concludes that Plaintiffs are entitled only to Mary-Kate's share of the escrowed proceeds.

The parties do not dispute that, as a general matter, Amy and Mary-Kate would each be entitled to a one-half share of the escrowed proceeds as a result of their respective interests in the East Amherst property as tenants in common.[4] *See First Fed. Sav. & Loan Ass'n v. Brown*, 78 A.D.2d 119, 123 (4th Dep't 1980) ("Surplus money realized upon a foreclosure sale . . . stands in place of the land for all purposes of distribution among persons having vested interests or liens upon the land."). Plaintiffs' entitlement to one or both of those shares arises, if at all, from their claim that Douglas and Amy conspired to fraudulently transfer the East Amherst property to Amy and Mary-Kate in order to prevent creditors from reaching his interest in the property. *See* ECF No. 75-3 at 6.

Importantly, however, the liability of the transferee of a fraudulent transfer—that is, of Amy and/or Mary-Kate—is limited "to the value of the [asset] that was fraudulently conveyed." *Liberty Mut. Ins. Co. v. Horizon Bus. Co.*, No. 10-CV-449, 2011 WL 1131098, at *8 (E.D.N.Y. Feb. 22, 2011) (discussing state law); *see also* 28 U.S.C. §§ 3306(a)(1), 3307(b)(1). The asset at issue in this case is not the East Amherst property as a whole, but only Douglas's interest in the

---

[3] In the tax foreclosure proceedings, the State alleged that Amy and Mary-Kate had used the "tax foreclosure process to thwart [Plaintiffs'] efforts" to collect on their judgment. ECF No. 75-6 at 190. The substance of that allegation need not be addressed any further because Plaintiffs do not seek to unwind the foreclosure process.

[4] For now, the Court leaves aside Matthew's claimed interest in a share of the proceeds.

4

property as a tenant by the entirety. "[W]hen real property is conveyed to a husband and wife who are lawfully married to each other at the time of the conveyance they do not take as joint tenants or as tenants in common but as tenants by the entirety, each being seized by the whole and upon the death of one, the whole estate remains in the survivor." *Matter of Tsunis*, 29 B.R. 527, 529 (E.D.N.Y. 1983). Nevertheless, "there is nothing in New York law that prevents one of the co-owners from mortgaging or making an effective conveyance of his or her own interest in the tenancy. To the contrary, each tenant may sell, mortgage or otherwise encumber his or her rights in the property, subject to the continuing rights of the other." *V.R.W., Inc. v. Klein*, 68 N.Y.2d 560, 565 (1986). As is relevant here, a spouse's interest in the property may be "subject to the lien of judgment and can be sold under execution." *In re Parameswaran*, 50 B.R. 780, 783 (S.D.N.Y. 1985). The purchaser "at such sale becomes a tenant in common with the [other] spouse and is subject to the spouse's right of survivorship." *Id.*; *see also Tsunis*, 29 B.R. at 530 ("A judgment against one tenant by the entirety may be enforced against his interest at an execution sale, however such purchaser loses all interest in the property if the other spouse survives.").

In other words, as it stood before the transfer, Douglas's creditors could only have encumbered his interest in the property; Amy's interest would have remained unimpaired. Moreover, both the FDCPA and Article 10 exclude Amy's interest from the definition of Douglas's "assets" for purposes of an avoidance action. 28 U.S.C. § 3301(2)(C) (defining "assets" to exclude any interest "in real property held in tenancy by the entirety . . . *to the extent such interest is not subject to process by the United States holding a claim against only one tenant*" (emphasis added)); *see also* N.Y. Debtor & Creditor Law § 270 (defining debtor's "assets" to mean "property *not exempt from liability for his debts*" (emphasis added)). It follows that Plaintiffs may only seek to avoid the transfer of Douglas's interest in the property. Douglas's interest was, in substance, the

5

interest conveyed to Mary-Kate, while Amy retained her interest in the East Amherst property after the transfer, albeit as a tenant in common rather than a tenant by the entirety.

Accordingly, Plaintiffs may proceed with their claims against Mary-Kate, but Amy's interest in the East Amherst property is not an "asset" of Douglas's that may be avoided under the FDCPA or Article 10. Plaintiffs are not entitled to judgment as a matter of law on any of their claims with respect to Amy's interest in the escrowed proceeds. To the contrary, Amy is entitled to judgment as a matter of law on such claims.[5]

Although Plaintiffs bring claims for both actual and constructive fraud, the Court need only analyze the constructive-fraud claims. The Court first analyzes the claim arising under the FDCPA. "A constructive fraudulent transfer under the FDCPA is a transfer by a debtor whether such debt arises before or after the transfer is made, that is made without receiving a reasonably equivalent value in exchange for the transfer . . . if the debtor . . . intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due." *United States v. Strevell*, No. 16-CV-669, 2018 WL 3328571, at *4 (N.D.N.Y. July 6, 2018); *see also* 28 U.S.C. § 3304(b)(1)(B)(ii).

These requirements are satisfied based on three undisputed facts. First, it is undisputed that Douglas transferred his interest in the East Amherst property to Mary-Kate without receiving a reasonably equivalent value in exchange: the fair market value of the property was $1.45 million at the time of the transfer, and Mary-Kate received a half-share interest in the property as "a gift,

---

[5] While Amy has not moved for summary judgment, this Court may grant summary judgment for a nonmovant *sua sponte* so long as the parties have been given "notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(1). Because the factual record is fully developed, and because Plaintiffs themselves raised and addressed the issue of Amy's pre-existing interest in the East Amherst property, *see* ECF No. 75-3 at 20-22, summary judgment is properly granted without further motion practice. *See Thomas v. Genova*, 698 F. Supp. 3d 493, 527 (E.D.N.Y. 2023) (noting that "[a]ny threat of procedural prejudice posed by the granting *sua sponte* of summary judgment on a claim is greatly diminished if the court's *sua sponte* determination is based on issues identical to those raised by the moving party" (internal quotation marks omitted)).

6

essentially." ECF No. 75-2 ¶ 77; *see id.* ¶ 98; *see also C.F.P.B. v. MacKinnon*, 569 F. Supp. 3d 162, 168 (W.D.N.Y. 2021); *United States v. Pritchett*, No. 09-CV-322, 2011 WL 197763, at *7 (E.D.N.Y. Jan. 20, 2011) (collecting cases for the proposition that a nominal sum is not "reasonably equivalent value" for the transfer of a debtor's interest in a residential property). Amy, Mary-Kate, and Matthew do not dispute this assertion of fact. *See* ECF No. 87 ¶ 77; ECF No. 109 ¶ 77. Douglas purports to dispute this fact, *see* ECF 105 ¶ 77, but fails to include a "citation to admissible evidence" to support that denial. Loc. R. Civ. P. 56(a)(2). Douglas was explicitly warned about the need to conform his Rule 56 statement to the Local Rules, and was given a full opportunity to submit a conforming document. *See* ECF No. 103. Accordingly, Plaintiffs' assertion is "deemed admitted" insofar as Douglas failed to "specifically controvert[] [it]" in accordance with the Local Rules. Loc. R. Civ. P. 56(a)(2).

That said, Douglas, Amy, and Mary-Kate do suggest that Douglas and Amy gave Mary-Kate an interest in the property so that she could provide care for another of Douglas and Amy's daughters. *See, e.g.*, ECF No. 88-1 at 3. Even accepting that allegation, Defendants' declarations fail to establish an agreed-upon arrangement whereby Douglas and Amy *exchanged* Douglas's property interest for Mary-Kate's provision of those services. *See* ECF No. 88-3 at 4-5; ECF No. 88-4 at 1-2; ECF No. 91-2 at 3. At best, the declarations indicate that Douglas and Amy unilaterally made the transfer on the belief that Mary-Kate was committed to providing the necessary care for their other daughter. That does not constitute "reasonably equivalent value." *See In re Khan*, No. 10-CV-46901, 2014 WL 4956676, at *13 (E.D.N.Y. Sept. 30, 2014) ("[S]upport provided . . . as a matter of family, moral, and cultural duty is not considered in law to be fair consideration or reasonably equivalent value."); *see also* 28 U.S.C. § 3303(a).

7

Second, it is undisputed that Douglas knew at the time of the transfer that his potential personal liability for his entities' unlawful debt collection activities "vastly exceeded [his] personal net worth." ECF No. 75-2 ¶ 4; *see also id.* ¶ 27.  Specifically, Plaintiffs assert that Douglas knew in 2015 that he "could be personally liable" if his entities were found to have violated the law and that, given the size of his operations, "the amount for which [he] could potentially be liable vastly exceeded [his] personal net worth." ECF No. 75-2 ¶ 4.  No party disputes this assertion.  ECF No. 87 ¶ 4; ECF No. 105 ¶ 4; ECF No. 109 ¶ 4.  Plaintiffs also assert that at least since 2012, Douglas "knew that his entities were engaged in unlawful practices, including adding unwarranted charges to consumers' accounts and collectors collecting amounts over the balance due." ECF No. 75-2 ¶ 27.  Amy, Mary-Kate, and Matthew do not dispute this assertion.  ECF No. 87 ¶ 27; ECF No. 109 ¶ 27.  Douglas purports to dispute this assertion, ECF No. 105 ¶ 27, but again, he fails to cite admissible evidence supporting the denial, so the assertion is deemed admitted.  Loc. R. Civ. P. 56(a)(2).

Third, it is undisputed that Douglas was aware that governmental entities were actively investigating entities with which he was associated.  *See* ECF No. 75-2 ¶¶ 14, 22, 32 ; ECF No. 87 ¶¶ 14, 22, 32; ECF No. 109 ¶¶ 14, 22, 32.  Douglas admits or does not address Plaintiffs' assertions, *see* ECF No. 105 ¶¶ 14, 22, 32, so they are again deemed admitted for failure to cite admissible evidence in support.

Given the undisputed facts, a reasonable person would have believed that he would incur debts (*i.e.* civil monetary judgments) beyond his ability to pay where (1) he was engaging in unlawful debt-collection activities; (2) those unlawful activities could subject him to personal liability vastly exceeding his net worth; and (3) governmental entities were actively investigating the debt-collection activities of entities with which he was associated.  *Accord United States v.*

*Brantley*, 816 F. App'x 934, 938 (5th Cir. 2020) (summary order); *United States v. Resnick*, 594 F.3d 562, 567 (7th Cir. 2010). Though Douglas denies that, at the time of the transfer, he had any actual knowledge that he "might be later named as a defendant in any legal action," ECF No. 91-2 ¶ 20, his actual knowledge is irrelevant. The question is whether he "reasonably should have believed that he would incur[] debts beyond his ability to pay." 28 U.S.C. § 3304(b)(1)(B)(ii). Therefore, the Bureau is entitled to summary judgment on the constructive-fraud FDCPA claim. The transfer of Douglas's interest in the East Amherst property to Mary-Kate may be avoided. *See id.*

The same conclusion is reached on the State's Article 10 claim. Under the law applicable at the time of Douglas's transfer, "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." *In re Norstan Apparel Shops, Inc.*, 367 B.R. 68, 78 (E.D.N.Y. 2007). Where, as here, there is an absence of fair consideration, "it is presumed that the transfer made the debtor insolvent, and the burden is on the defendant to rebut this presumption." *In re TC Liquidations LLC*, 463 B.R. 257, 267 (E.D.N.Y. 2011). Douglas offers nothing but conclusory assertions to suggest that he was solvent at the time of the transfer. *See* ECF No. 91-2 ¶ 15; *see also Cheek v. Brooks*, 188 A.D.3d 785, 787 (2d Dep't 2020) (noting that "conclusory assertions" of solvency are "insufficient to rebut th[e] presumption"). Accordingly, the State is entitled to judgment as a matter of law on its constructive-fraud claim against Douglas and Mary-Kate.

The Court now turns to remedies on the constructive-fraud claims. Although Defendants contest the merits of Plaintiffs' claims, they do not dispute that the Court has the general authority to order the remedy that Plaintiffs request—namely, the transfer of the escrowed proceeds. *See* 28

U.S.C. § 3306(a)(1)-(3); *United States v. Kincaid*, 681 F. App'x 498, 499 (7th Cir. 2017) (summary order) (noting that, under the FDCPA, the government may collect from the transferee the value of fraudulently transferred property); N.Y. Debtor & Creditor Law § 278(1)(a); *Brown v. Kimmel*, 68 A.D.2d 896, 897 (2d Dep't 1979). The Court agrees with Plaintiffs that, because the property has been liquidated, the appropriate remedy is to direct that the value of Mary-Kate's entitlement to a share in the escrowed proceeds—an entitlement which she obtained by virtue of Douglas's fraudulent transfer—be disbursed to Plaintiffs. *See* 28 U.S.C. § 3306(a)(1)-(3), 3307(b)(1); N.Y. Debtor & Creditor Law § 278(1). As a tenant in common with Amy, Mary-Kate is entitled to a half-share of those proceeds ($666,113.15). *See Brown*, 78 A.D.2d at 123. The Court directs that this amount be disbursed to Plaintiffs.

No offset will be made for Matthew's claimed mortgage on the property. This is for two reasons. First, Matthew fails to respond to Plaintiffs' argument that his purported mortgage cannot encumber Mary-Kate's interest in the property, so any opposition to that argument is deemed waived. *See* ECF No. 75-3 at 17; ECF No. 89. Second, Matthew admits that he did not appear in the foreclosure proceedings. ECF No. 87 ¶ 121. As a result, regardless of the lien that Matthew may have had on the property prior to the foreclosure, he has failed to marshal any evidence to suggest that he retains an interest in Mary-Kate's share of the escrowed proceeds after the foreclosure. *See* Erie County Tax Act § 11-10 (discussing the consequences for an interested party's failure to file an answer); *Hoge v. Chautauqua Cnty.*, 173 A.D.3d 1731, 1732 (4th Dep't 2019).

In sum, the Court concludes that Plaintiffs have established entitlement to judgment as a matter of law on the FDCPA and Article 10 constructive-fraud claims against Douglas and Mary-Kate related to the transfer of Douglas's interest in the East Amherst property. Plaintiffs have also

10

established entitlement as a matter of law to their proposed remedy: that Mary-Kate's portion of the escrowed proceeds ($666,113.15) be disbursed to them in equal shares.

With the resolution of Plaintiffs' constructive-fraud claims against Douglas and Mary-Kate, Plaintiffs have obtained the "complete relief" that they request against Douglas and Mary-Kate in this action. *Novella v. Westchester Cnty*, 661 F.3d 128, 149 (2d Cir. 2011). Consequently, the actual-fraud claims against Douglas and Mary-Kate may be dismissed as "moot," in the non-technical sense that the Court "need not [] decide[]" these claims in light of the disposition of Plaintiffs' other constructive-fraud claims. *Id.* Likewise, the claims against Matthew are dismissed as moot—again in this non-technical sense—insofar as their resolution is immaterial given the disposition of the claims against Amy and Mary-Kate.

In conclusively resolving this case, the Court emphasizes that it takes no other position as to the priority of interests regarding the remaining escrowed proceeds. Whether Amy, Matthew, or any other claimant is entitled to the rest of the escrowed proceeds is not a matter embraced by the present litigation, and the Court's decision should not be understood to take any position beyond its order that Plaintiffs are entitled to $666,113.15 from the proceeds free and clear from any claim by Matthew MacKinnon.

## CONCLUSION

For the reasons stated herein, Plaintiffs' motion for summary judgment (ECF No. 75) is GRANTED IN PART and DENIED IN PART, insofar as Plaintiffs are entitled as a matter of law against Douglas MacKinnon and Mary-Kate MacKinnon on the claims for constructive fraud under the FDCPA and Article 10.

Within thirty days of the date of this order, the Offices of Lippes Mathias, LLP, in its capacity as escrow agent pursuant to the Order issued by the Hon. Suzanne Maxwell Barnes on

June 22, 2023 (In Rem No. 170, Index No. 2022-600093), shall disburse $666,113.15 from escrow—which represents Mary-Kate MacKinnon's portion of the escrowed proceeds and which is disbursed free and clear of any claim by Matthew MacKinnon—to the Bureau and the State in equal shares. In addition, the Court hereby enters a declaratory judgment that Plaintiffs are each entitled to a half-share of Mary-Kate's interest in the escrowed proceeds—that is, $666,113.15— free and clear of any alleged mortgage interest of Matthew MacKinnon.

Defendant Amy MacKinnon is entitled to judgment as a matter of law on all of Plaintiffs' claims under the FDCPA and Article 10. The Court dismisses Plaintiffs' remaining claims against Douglas MacKinnon, Mary-Kate MacKinnon, and Matthew MacKinnon as moot. Plaintiffs' motion for sanctions (ECF No. 77) is DENIED AS MOOT. The Clerk of Court is directed to enter judgment and close the case.

IT IS SO ORDERED.

Dated: September 24, 2024
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York